GERÓNIMO VALLECILLO, Plaintiff and Appellant, v. FERNANDO SURIA GONZÁLEZ ET UX., Defendants and Appellees.

No. 6865. Argued November 5, 1937.—Decided January 11, 1938.

*Jaime Sifre, Jr.* and *Arturo Ortiz Toro* for appellant. *Antonio Reyes Delgado* for appellees.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

On July 26, 1932, Gerónimo Vallecillo, by his attorneys, brought a summary foreclosure proceeding in the District Court of Arecibo against a rural property located in Palmas Altas Ward of the municipality of Manatí, formerly Barceloneta, the property having an area of 293 *cuerdas,* and being bounded upon the north by the high water mark. The owner of the property, Fernando Suria, mortgaged the same to secure a certain obligation which he failed to pay. From this arose the foreclosure.

Upon completion of all of the steps of the proceeding, the property was sold at public auction on November 9, 1932, to Vallecillo, who offered therefor the sum of $12,500 to be applied on account of his $25,000 claim.

This being the situation, Vallecillo, on March 30, 1933, filed in court a "Motion for possession of the whole of the property." The averments are literally as follows:

"1. That on November 9, 1932 there was a sale at public auction of the property subject to the mortgage foreclosure in this case, and that the same was awarded at the said sale to the plaintiff to be applied on account of his claim against the defendants.

"2. That on that date the plaintiff took possession of the property by delivery made to him by the marshal of this court, but that he has subsequently found living on part of the property some persons who have refused to vacate the same in spite of the plaintiff's demands."

He prayed that the court order the clerk to issue the proper writ to the marshal. The motion was granted.

On June 23 following the foreclosing creditor presented another motion stating that the marshal had found the persons mentioned living on the property, had notified them that the property had passed to the ownership of the plaintiff, and had granted them 30 days within which to vacate the same, under threat of ejectment. He further stated that the period had expired without the possessors of the property having done anything, and prayed that the court order the clerk to issue a writ to the marshal to proceed without delay to dispossess them.

The motion was denied, as follows:

"Upon consideration of the motion filed by the plaintiff in this case praying that the marshal be ordered to dispossess a number of persons who have houses located on the lands of the plaintiff, and upon consideration of the reports of the marshal, who states that such houses are found to be located outside of the boundaries of the property awarded to Mr. Vallecillo, and upon consideration, also, of the fact that the plaintiff has already been placed in possession of the property awarded to him, the Court believing that what the plaintiff now prays for would be ground for a separate action to determine whether the persons in possession of that place are within his boundaries, the Court denies the motion so presented."

The foreclosing creditor modified his petition, and the court on July 5, 1933 ordered:

" . . . that an order be issued, when asked for by the petitioner, for said persons to appear on the day and hour to be fixed by the Court, to show cause, if any there be, why the marshal should not be ordered to eject them and their belongings from the property subject of this mortgage foreclosure proceeding."

The order was asked for, issued, and served by the marshal, and on December 1, 1933, twenty one persons appeared and objected to the ejectment, setting forth their reasons in a written joint answer filed by counsel.

Evidence was taken, and on April 30, 1934, the court denied the motion for ejectment. The foreclosing creditor appealed, and the transcript of the evidence was filed in

510

November, 1934, and appellant's brief in July, 1935. The appellees filed no brief and did not appear at the hearing of the appeal, which was had on November 5, 1937.

Appellant assigns 9 errors, all connected with the weighing of the evidence by the trial judge, as appears from his order of April 30, 1933, as follows:

"There is no doubt that Mr. Vallecillo is the owner of the property of 293 *cuerdas* described in this order, since not only has it been shown by the deed of sale executed in his favor by the marshal, but because, moreover, what is evident is not denied. But, in the matter which is now before us for decision, there has been no discussion as to whether Mr. Vallecillo is or is not the owner of the property in question. The purpose of this proceeding is to determine whether the aforesaid persons occupy with their houses a part of the lands of Mr. Vallecillo or not. The respondents have presented several witnesses to show that their houses are not located on Mr. Vallecillo's property, but perhaps on land belonging to the People of Puerto Rico. Among these witnesses there is Mr. Francisco Miranda, Marshal of this Court, who testified that these people live at the very end of the northern part, there being a highway dividing their houses from the property and that in some places there is a hedge between the property and the said road. The deputy marshal, Hernando Mattei, also testified, stating that there is a neighborhood road between the property and the houses of these persons and that these buildings are between the sea and the nighborhood road. Some of the most interesting testimony was that of Félix R. Rivera, clerk of this Court. Rivera testified that the former owner of the property, Mr. Suria González, is a cousin of his wife, and that he (the witness) knows that place very well because he was for a long time employed by Central Plazuela and for that reason knows that the municipal road running from Barceloneta to Palmas Altas was built, partly on lands belonging to Suria, donated by him to the municipality, and partly on lands within the maritime zone. Félix Hernández stated that he had been living in that place for 23 years and that his house was located between the sea and the road. Zenón Nogueras made a similar statement. Cayetana Román, an old woman of 70, testified that for 60 years she had been living in the same place and that those lands belong to the maritime zone. Elena Domínguez testified that she is a widow and that her husband left her the house which she has there, and that she has been living

in that place for 38 years. Fernando Rosado testified that he had lived there all his life. Antonia Domínguez, another old woman of 70, stated that she already had her little house in that place before the San Ciriaco hurricane.

"For the plaintiff, Félix Guzmán testified, stating: That when he went up to the property to take it over as mayordomo there were already in existence some wire fences dividing the property from the neighborhood road; that they went over the property and Mr. Vallecillo showed him that the boundary of the property on the north is the sea, but that the houses are all between the fence and the sea.

"The trial judge made an occular inspection of the place and could observe that to get there one takes a neighborhood road which, starting from Barceloneta, extends for a distance of approximately 4 kilometers before reaching the place. There is there a settlement made up of some 60 houses, which, from time immemorial, has been known as Palmas Altas. This setttlement is a ward of Barceloneta and appears on the map of our island. The trial judge observed, curiously enough, that with a single exception all of the houses are located within the space between the neighborhood road and the sea. The land is a little high, forming with respect to the beach, a kind of ridge, approximately 2 meters high. The beach properly speaking begins at the base of the ridge and has a width of 10 meters more or less, and when the sea is somewhat rough, the breaking waves expire at the base of the ridge. Mr. Vallecillo's property is separated from the road above mentioned by a barbed wire fence. At the end of the road are found some buildings, establishments, and a wharf belonging to Plazuela Sugar Co. through which shipments of sugars processed by that corporation are made. The attention of the trial judge was strongly called to the following circumstance; if the fence enclosing the western boundary of Mr. Vallecillo's property were extended toward the north, up to the end of the ridge, we would find that the road above mentioned would be cut off and that therefore Plazuela Sugar Company would be without access to its establishments and wharf.

"During the ocular inspection the plaintiff testified that he had been manager of Central Plazuela for many years and that in such capacity he had visited many times the lands of Mr. Suria Chaves, it being known to him that the northern boundary of the property was the maritime zone. Similarly the plaintiff offered a plan of the property made by a surveyor. At first sight it is seen that, aside from the fact that the plan is very old, it shows the portion of the

land located to the east of the road from Barceloneta to Palmas Altas, but shows nothing whatever about the land situated to the west of the way. And exactly at the angle which the Palmas Altas road makes with the Boca road and stretching to the west is where the greater part of the houses in dispute are located. The result is that the plan cannot be deemed conclusive evidence, since it shows only a portion of the property and not the whole.

"From an examination of the evidence offered by Mr. Vallecillo can the trial judge hold that it has been convincingly shown that the lands occupied by the persons cited in this matter form part of his property? No, undoubtedly not. Similarly it cannot be held that they do not belong to him.

"It is an undoubted fact that the marshal put Mr. Vallecillo in possession of the property, as the same is bounded with wire fences. Mr. Vallecillo contends that the marshal should give him possession of lands situated outside of the boundaries so marked, and the trial court believes that that officer cannot do so, and that court cannot enter such an order in a summary mortgage foreclosure proceeding. We must not forget that the sole issue is that of giving possesion to the purchaser of the property so purchased, with those characteristics which it had when it belonged to the judgment debtor, and it does not follow that merely because it has changed hands, it has changed in area or boundaries. If the purchaser of property in this special kind of proceeding, after taking possession of the same, becomes aware of the fact that there are other persons in possession of part of his lands, he may avail himself of a number of remedies, all of which are adequate and effective to recover the remainder of his property, but substitutes for the remedies so defined by statute, within which there are ample opportunities for all parties to settle the controversy through peremptory and compelling remedies, ought not to be countenanced by the courts of justice. It is obvious that the purchaser of property at a judicial sale has the right to take possession thereof; but the purchase does not authorize him to invade other, adjoining lands.

"Mr. Vallecillo raises several legal question which, in the opinion of the trial judge, have no application to this case. The first legal proposition which the plaintiff advances in his support is that the action of these persons, in refusing to vacate the sites which they occupy, is an interruption or suspension of the summary proceedings, which can only be suspended in the cases specified in Section 175 of the Regulations for Execution of the Mortgage Law. The

case of *Arroyo* v. *Zavala*, 40 P.R.R. 257, is cited in support of the proposition that the summary mortgage foreclosure proceeding does not end with the marshal's sale, but with possession, a deed, and its record. We are fully in agreement with Mr. Vallecillo. But we are not in agreement with him in considering the situation of the occupants of the lands in Palmas Altas as a suspension of the summary proceedings. We are not in agreement on this point, since Mr. Vallecillo took possession of the property given to him by the marshal, and now seeks to disposses certain persons from a specified place, without having shown that such lands form part of his property. It would be an absurd result if the purchaser of a property sold in a summary foreclosure proceeding should be compelled to bring suits against the possessors thereof; but it is no less true that the title acquired by a purchaser in such case does not authorize him to take possession of adjoining lands not included within the property which he purchased.

"Another of the legal propositions advanced by Mr. Vallecillo is that this proceeding should be treated as though it were an unlawful detainer proceeding. In support of that he avers that there is no conflict of titles and other matters pertinent to an unlawful detainer proceeding, but completely irrelevant here, where we are merely trying to determine whether Mr. Vallecillo took possession of the whole of the property which he purchased or not. In the findings already set forth in the course of this opinion, we have set forth the grounds which we have for believing that in a summary and injunctive proceeding such as this now before us, it is improper to decide whether a whole village, a whole settlement, which from time immemorial has been established in that place, should be demolished and razed because someone happens to say that those lands are an integral part of his property. The court would have no hesitancy in ordering the destruction of that settlement, provided Mr. Vallecillo had shown without room for doubt that he is the owner of those lands. But if he has not shown that, no order can be entered dispossessing the persons occupying that place."

We have given careful attention to plaintiff's brief, which contains in the first place a complete extract of the evidence, and which then separately attacks 8 conclusions of the court in weighing the same.

It may be that the court went too far in some of its statements, but its attitude toward the problem presented to it was, in our opinion, generally correct.

In his argument of his ninth assignment, which is a résumé of all of the assignments, the appellant expresses himself as follows:

"It is evident from the discussion of the foregoing assignments that the Hon. Rafael Sancho Bonet committed manifest error in weighing the evidence.

"We say that he erred in weighing the evidence and make no comment with respect to the provisions of Section 175 of the Mortgage Law, with reference to the proposition laid down in the case of *Arroyo* v. *Zavala*, 40 P.R.R. 257, and to other principles of law, since the court in fact seems to admit the correctness of our position from a technical point of view, and to have refrained from ordering the dispossession of the respondents solely on questions of fact.

· "We wish to make only the following observation: This proceeding is not a constrained and peremptory one. On the contrary, it is a broad one, since we believed it necessary to conform ourselves to the latest precedents laid down by this court. It was for that reason that instead of asking for a peremptory order of ejectment, we filed our motion so that the respondents might be given an opportunity to be heard. They were then given their day in court."

It would have been desirable to have had a more ample exposition of the statutes and the decisions cited in connection with the procedure followed in this case.

Section 175 of the mortgage regulations, not of the law, deals with the prohibition against the suspension of the summary proceedings except in the cases· therein specified. In the course of the opinion delivered by Mr. Justice Texidor, upon which the judgment in the case of *Arroyo* v. *Zavala*, 40 P.R.R. 257, 267, was founded, it was said: "Foreclosure proceedings do not end with the marshal's sale, but with the possession of the premises sold, the execution of the deed of sale and its record in the registry of property," but neither the statute nor the decisions which have been cited determine the scope of the procedure to be followed to put the creditor into possession.

What was done in this case seems logical, perhaps as much as could have been done within the same summary mortgage foreclosure proceeding. If the titles, in the light of the evidence, had presented a completely clear case, the order for dispossession ought perhaps to have been entered, but the facts show a situation which ought to be explained with greater opportunity to enter a judgment fixing with certainty the extent of all the interests in question.

This is not the case of a boundary perfectly determined upon the soil. The title states that the property bounds on the north with the maritime zone, and the Spanish Law of Ports, extended to Puerto Rico on May 3, 1886, states:

"The maritime zone (*zona marítimo-terrestre*) on the shores and beaches of the Island of Puerto Rico and adjacent islands forming part of the Spanish territory, is that place where the sea ebbs and flows where the influence of the tides is felt; and where there is no tide, it is the point reached by the highest waves during storms.

"This maritime zone also exists and is extensive to navigable rivers or to those which are influenced by the tides."

This is not a case of one house or of two houses. There are more than 20, the evidence indicating that there are many more which apparently are not discussed and which form a settlement near the place known as "El Cañito."

Similarly this is not a situation which has arisen all at once, but one which has been in existence for more than 30 years, plaintiff's acquisition, on the other hand, being recent. The matter is not explained in his title deed. There is not even any reference to it. The former owner was not called as a witness.

Since these are, broadly speaking, the circumstances, we do not feel inclined to reverse the order appealed from. It has not been shown that the appeal is legally justifiable, and the appeal must therefore be denied and the order appealed from affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.